18-1803-pr
Nunez v. United States

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2019

(Argued: August 29, 2019                    Decided: March 30, 2020)

Docket No. 18-1803-pr

_____

MIGUEL NUNEZ,

*Petitioner-Appellant*,

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

_____

Before: POOLER, PARKER, and RAGGI, *Circuit Judges*.

Petitioner Miguel Nunez appeals from a judgment of the United States

District Court for the Southern District of New York (Lewis A. Kaplan, *J.*)

denying his 28 U.S.C. § 2255 motion as untimely. The district court held that

Nunez could not show that his motion was timely pursuant to 28 U.S.C. §

2255(f)(3) because the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), did not recognize a retroactive right not to be sentenced based upon the residual clause in the Career Offender Guideline of the pre-*Booker* Sentencing Guidelines. We hold that the district court properly concluded that *Johnson* did not give rise to the right Nunez asserts and, therefore, correctly denied his Section 2255 motion as untimely.

Affirmed.

Judge Pooler and Judge Raggi each concur in separate opinions.

_____

EDWARD S. ZAS, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, *for Petitioner-Appellant Miguel Nunez*.

NATHAN REHN, Assistant United States Attorney (Anna M. Skotko, Assistant United States Attorney, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY, *for Respondent-Appellee*.

POOLER, *Circuit Judge*:

Petitioner Miguel Nunez appeals from the May 24, 2018 judgment of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *J.*) denying as untimely Nunez's 28 U.S.C. § 2255 motion challenging his February 7, 2000 sentence for substantive and conspiratorial Hobbs Act robbery. *See* 18 U.S.C. § 1951(a). Nunez is currently serving 360 months' imprisonment for these crimes, a significant upward departure from the 151-to-188 month Guidelines range calculated by the district court under the presumptively binding pre-*Booker* Sentencing Guidelines. *See United States v. Booker*, 543 U.S. 220 (2005). That Guidelines range was dictated by the Career Offender Guideline, *see* U.S.S.G. § 4B1.1, which the district court applied upon finding that Nunez's present, and two prior, convictions were all for "crime[s] of violence," as defined in the Guideline's residual clause, *id*. § 4B1.2. Nunez argues that this residual clause is unconstitutionally vague, and thus, his sentencing violates due process. In support, Nunez relies on *Johnson v. United States*, 135 S. Ct. 2551 (2015), which struck down an identically worded provision of the Armed Career Criminal Act as unconstitutionally vague. The issue presented to us on appeal is whether the right Nunez asserts was recognized in *Johnson*, rendering his motion timely

pursuant to 28 U.S.C. § 2255(f)(3), or whether the right he asserts has yet to be recognized, rendering his motion untimely. We hold that *Johnson* did not itself render the residual clause of the pre-*Booker* Career Offender Guideline unconstitutionally vague and, thus, did not recognize the right Nunez asserts. We therefore affirm the district court's denial of Nunez's Section 2255 motion as untimely.

## BACKGROUND

**I.    Nunez's Conviction**

On October 5, 1999, Miguel Nunez pled guilty to Hobbs Act robbery and conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). Nunez and two co-conspirators had broken into the apartment of a male and female couple who ran a florist business and stole between $12,000 and $14,000 in cash, along with other personal items of value. During the course of the robbery, Nunez and one of his co-conspirators tied both victims up with rope and raped the female proprietor of the florist business.

At the time of Nunez's sentencing, a defendant was considered a career offender under the Sentencing Guidelines if,

4

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1 (1998). Nunez stipulated that he was eighteen years old at the time of his Hobbs Act offenses, he had two prior felony convictions for New York first-degree robbery, and Hobbs Act robbery was a crime of violence.

The Career Offender Guideline defined a crime of violence as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year that—"

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*."

U.S.S.G. § 4B1.2(a) (1998) (emphasis added). The first definition is known as the elements clause. The second definition is known as the enumerated offenses clause. The italicized part of the second definition is known as the residual clause.  The district court concluded that Nunez's Hobbs Act robbery, and two

5

prior felony convictions, were "crimes of violence" under the residual clause. Thus, Nunez constituted a career offender.

As a career offender, Nunez's Guidelines range was 151 to 188 months of imprisonment, as opposed to 121 to 151 months. The district court departed upwards from even this higher Guidelines range under provisions of the Guidelines that permit doing so when a defendant has caused extreme psychological injury in the victim and the conduct was extreme. Accordingly, the district court sentenced Nunez to 240 months for Hobbs Act robbery and 120 months for Hobbs Act conspiracy, for a total of 360 months of imprisonment. On appeal, this court upheld the sentence. *United States v. Nunez*, 8 F. App'x 81 (2d Cir. 2001).

## II.    Subsequent Supreme Court Decisions

Some years later, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), which held that a mandatory application of the Sentencing Guidelines was unconstitutional, *see id.* at 245–46, and to avoid that result, construed the Guidelines as advisory, *see id.* at 245, 259.

More recently, the Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551 (2015). The Court in *Johnson* held that "imposing an increased sentence

6

under the residual clause of the Armed Career Criminal Act"—which contained a residual clause identical to that in the crime of violence definition of the Career Offender Guideline—"violate[d] the Constitution's guarantee of due process" because the clause was unconstitutionally vague. *Id*. at 2563. Using the rationale in *Johnson*, the Court subsequently struck down similarly worded residual clauses in the crime of violence definitions of the Immigration and Nationality Act, *see Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and in 18 U.S.C. § 924(c)(3)(B), *see United States v. Davis*, 139 S. Ct. 2319 (2019).

The Supreme Court also dealt with a vagueness challenge to the residual clause of the Career Offender Guideline as applied after *Booker* in *Beckles v. United States*, 137 S. Ct. 886 (2017). In *Beckles*, the defendant argued that the Guideline's residual clause was void for vagueness, making his sentencing pursuant to the clause unconstitutional. *Id*. at 890-91. The Supreme Court rejected the argument, refusing to extend *Johnson*'s reasoning to the post-*Booker* Guidelines. *Id*. at 891–92. The Court explained that unlike the ACCA's residual clause, which mandated certain, higher sentence ranges, "the advisory Guidelines do not fix the permissible range of sentences." *Id*. at 892. The advisory Guidelines were for this reason not subject to a vagueness challenge. *Id*. In her

7

concurring opinion, Justice Sotomayor noted that "[t]he Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in *United States v. Booker* . . . may mount vagueness attacks on their sentences." *Id*. at 903 n.4 (Sotomayor, *J.*, concurring in the judgment) (internal quotation marks and citation omitted).

**III.    Nunez's Section 2255 Motion**

On June 21, 2016, eighteen years after his federal conviction, but less than one year after *Johnson* was decided, Nunez filed a motion under 28 U.S.C. § 2255 to vacate his 30-year sentence. He argued that *Johnson* renders the residual clause of the pre-*Booker* Career Offender Guideline unconstitutionally vague, so he should not have been sentenced as a career offender. *See Nunez v. United States*, No. 16-cv-4742, 2018 WL 2371714, at *1-2 (S.D.N.Y. May 24, 2018). The district court decided the motion was untimely because "the Supreme Court has not itself extended its holding in *Johnson* to the pre-*Booker* guidelines." *Id*. at *2. Nunez timely appealed.

8

**DISCUSSION**

On appeal from the denial of a Section 2255 motion, we review a district court's conclusions of law de novo. *Sapia v. United States*, 433 F.3d 212, 216 (2d Cir. 2005).

Motions under Section 2255 are subject to a one-year statute of limitations that runs from several possible dates, only one of which is relevant here: "[T]he date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).

Nunez claims that his motion is timely under Section 2255(f)(3) because he filed it less than one year after the Supreme Court in *Johnson* first recognized the right he invokes. Nunez argues that his Section 2255 motion challenging a career-offender sentence imposed under the mandatory Guidelines asserts the same due process right recognized in *Johnson*. He argues that, like the ACCA's residual clause, the residual clause of the mandatory Career Offender Guideline "fixed" his sentencing range and was subject to the same concerns articulated in *Johnson*. Because the ACCA and residual clause of the Career Offender Guideline are identically worded and interpreted, Nunez claims the holding in *Johnson* applies

equally to the residual clause in the Guideline and, thus, compels the conclusion that *Johnson* recognized the right he asserts.

We, however, conclude that *Johnson* did not itself render the residual clause of the mandatory Career Offender Guideline vague, as required for Section 2255 purposes. Our decision aligns with that of the majority of circuits to have addressed the issue. *United States v. London*, 937 F.3d 502 (5th Cir. 2019); *United States v. Blackstone*, 903 F.3d 1020 (9th Cir. 2018); *Russo v. United States*, 902 F.3d 880 (8th Cir. 2018); *United States v. Green*, 898 F.3d 315 (3d Cir. 2018); *United States v. Greer*, 881 F.3d 1241 (10th Cir. 2018); *United States v. Brown*, 868 F.3d 297 (4th Cir. 2017); *Raybon v. United States*, 867 F.3d 625 (6th Cir. 2017).

In coming to the same conclusion, we are mindful that the Supreme Court has admonished lower courts "against framing [its] precedents at . . . a high level of generality" in reviewing claims under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), of which Section 2255 is a component. *See Lopez v. Smith*, 574 U.S. 1, 4, 6 (2014) (internal quotation marks and citation omitted); *Nevada v. Jackson*, 569 U.S. 505, 512 (2013). Instead, the Court has required identification of precedent related to "the specific question presented by th[e] case." *Lopez*, 574 U.S. at 6.

*Johnson* by its own terms addresses only the ACCA. The Court articulated its holding in that case specifically with regard to the ACCA: "We hold that imposing an increased sentence under the residual clause *of the Armed Career Criminal Act* violates the Constitution's guarantee of due process." 135 S. Ct. at 2563 (emphasis added). In addition, the Court cited exclusively to cases that dealt with the residual clause of the ACCA. *See id*. at 2558-60 (citing *Sykes v. United States*, 564 U.S. 1 (2011); *Chambers v. United States*, 555 U.S. 122 (2009); *James v. United States*, 550 U.S. 192 (2007)). Furthermore, in *Welch v. United States*, 136 S. Ct. 1257 (2016), which applied *Johnson* retroactively, the Court referred only to the effect of its holding on the ACCA. *Id*. at 1265 ("By striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of the *Armed Career Criminal Act* . . . ." (emphasis added)). These factors strongly signal that the rule established in *Johnson* was specific to the residual clause of the ACCA.

Our conclusion that the Court was not speaking to contexts beyond the ACCA in *Johnson* is reinforced by the fact that the Court has considered challenges to identical residual clauses in other statutes piecemeal. *See Session v. Dimaya*, 138 S. Ct. 1204 (2018); *United States v. Davis*, 139 S. Ct. 2319 (2019). Nor were the applications in these cases necessarily straightforward. As the Ninth

11

Circuit observed, "[i]t is not always obvious whether and how the Supreme Court will extend its holdings to different contexts," and in *Dimaya*, "it took a lengthy discussion to reach [the] conclusion, and four justices disagreed." *United States v. Blackstone*, 903 F.3d at 1026. These decisions further undermine Nunez's contention that *Johnson* in and of itself dictates the result of a vagueness challenge to the residual clause in the pre-*Booker* Career Offender Guideline.

Nunez relies on *Beckles v. United States*, 137 S. Ct. 886 (2017), a case holding that the post-*Booker advisory* Guidelines are *not* subject to vagueness challenges, to argue that the pre-*Booker mandatory* Guidelines *are* so subject. This, however, is not a conclusion reached in *Johnson*. Indeed, Justice Sotomayor's concurrence in *Beckles* explained that the question remains open. *See id.* at 903 n.4 (Sotomayor, *J.,* concurring in the judgment) (stating that the Court "leaves open the question whether defendants sentenced to terms of imprisonment before our decision in *United States v. Booker*—that is, during the period in which the Guidelines *did* fix the permissible range of sentences—may mount vagueness attacks on their sentences" (internal quotation marks and citations omitted)). In sum, while we agree that *Beckles* does not foreclose a vagueness challenge to the mandatory

12

Sentencing Guidelines, we cannot agree with Nunez that *Johnson* articulated the right he seeks to assert.

Nunez attempts to circumvent this inevitable conclusion by arguing that any discussion of how the Supreme Court defines the right in *Johnson* is not relevant to the timeliness of his petition. He relies on *Dodd v. United States*, 545 U.S. 353 (2005) and the Seventh Circuit's decision in *Cross v. United States*, 892 F.3d 288 (7th Cir. 2018). We are not persuaded.

*Dodd* is inapplicable here. That case established that a petitioner is required to bring a claim within one year after the Supreme Court announces a new rule—not within one year after the Supreme Court announces the rule is retroactive. 545 U.S. at 358-59. In deciding so, the Supreme Court noted that the first clause in Section 2255(f)(3), which states "the date on which the right asserted was initially recognized by the Supreme Court," is "the operative date." *Id*. at 358. The second clause, which states "if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," merely imposes a condition on the applicability of the subsection. *Id*. Nunez reads *Dodd* as requiring us to focus on the first clause of Section 2255(f)(3) regardless of whether the petitioner has framed the right asserted in a manner consistent with

13

how the Supreme Court articulated it. *Dodd* cannot, however, be stretched to accommodate this interpretation. No aspect of *Dodd* supports Nunez's interpretation that a defendant moving for Section 2255 relief may assert *any* right suggested by the Supreme Court within the past year for his motion to qualify as timely. *Dodd* simply stands for the proposition that the one-year statute of limitations period begins to run following the Supreme Court's recognition of a right, as opposed to the Court's retroactive application of the right. Nunez's invocation of *Dodd* is unavailing.

Nor are we persuaded by *Cross v. United States*, 892 F.3d 288 (7th Cir. 2018), the only Circuit decision holding that a Section 2255 motion challenging the residual clause of the pre-*Booker* Career Offender Guidelines is timely if filed within a year of *Johnson*. *Cross*, 892 F.3d at 293-94. In coming to this conclusion, the Seventh Circuit reasoned that the government's argument that *Johnson* did not recognize the right asserted because the Supreme Court has not extended the logic of *Johnson* to the pre-*Booker* mandatory guidelines "suffers from a fundamental flaw. It improperly reads a merits analysis into the limitations period." *Id*. at 293. But this conclusion "effectively reads 'recognized' out of 28 U.S.C. § 2255(f)(3) by not engaging in an inquiry into whether the right asserted

14

by the petitioner is the same right that was recognized by the Supreme Court."

*United States v. Green*, 898 F.3d 315, 322 (3d Cir. 2018). For this reason, we decline to adopt the Seventh Circuit's reasoning in *Cross*.

Rather, we join the majority of our sister circuits and hold that Section 2255(f)(3) requires courts to consider whether the right a petitioner asserts has been recognized by the Supreme Court as part and parcel of deciding whether a petition is timely. As such, though Nunez filed his petition within one year after *Johnson*, Nunez's petition may only be considered timely if the right he asserts was in fact recognized in *Johnson*. While Nunez asserts that the reasoning of *Johnson* can apply to the pre-*Booker* Guidelines, *Johnson* did not itself hold the residual clause of the pre-*Booker* Career Offender Guideline unconstitutionally vague. *Johnson* cannot be read so broadly, particularly in light of Supreme Court cautions against expansively construing its precedents in the AEDPA context, and Justice Sotomayor's concurring opinion in *Beckles* indicating that the question raised by Nunez remains open in the Supreme Court. Because *Johnson* has not recognized the right Nunez asserts, his Section 2255 motion is untimely.

15

## CONCLUSION

We hold that *Johnson v. United States*, 135 S. Ct. 2551 (2015) did not recognize a constitutional right not to be sentenced under the residual clause of the pre-*Booker* Career Offender Guideline. The order and judgment of the district court is therefore AFFIRMED.

POOLER, *Circuit Judge*:

I agree with the legal analysis and conclusion of the majority opinion, but I write separately to emphasize the injustice our decision today creates.

The Constitution guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. A statute, whether defining elements of crimes or fixing sentences, violates this guarantee when it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2019). "The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process." *Id*. (internal quotation marks and citations omitted).

As the majority explains, *Johnson* struck down an identically worded residual clause in the Armed Career Criminal Act as unconstitutionally vague. It is clear, in my view, that "if a sequence of words that increases a person's time in prison is unconstitutionally vague in one legally binding provision, that same sequence is unconstitutionally vague if it serves the same purpose in another

legally binding provision." *Brown v. United States*, 139 S. Ct. 14, 14 (2019) (Sotomayor, *J.*, dissenting from denial of certiorari). But due to the precedent laid out in the majority opinion, we are constrained in our ability to allow Nunez's seemingly meritorious claim to move forward.

Section 2255 petitioners are the only class of defendants who may raise the question of whether the residual clause in the pre-*Booker* Career Offender Guideline is unconstitutionally vague. As such, our decision "denies petitioners, and perhaps more than 1,000 like them, a chance to challenge the constitutionality of their sentences." *Brown*, 139 S. Ct. at 14 (Sotomayor, *J.*, dissenting from denial of certiorari). Therein lies the injustice.

I agree with Judge Raggi's observation that Nunez's crime was a "heinous" one. But the Constitution's protection against vague statutes applies no less to a defendant convicted of severe conduct. If Nunez's sentencing violates due process, he should be afforded the opportunity to challenge it. Unless and until the Supreme Court addresses whether *Johnson* applies to the mandatory Guidelines, however, petitioners like Nunez will be left with no procedural mechanism by which to raise, and seek redress for, constitutional grievances tied to their sentencings.

REENA RAGGI, *Circuit Judge,* concurring:

I join my colleagues in today unanimously affirming the denial of petitioner Miguel Nunez's 28 U.S.C. § 2255 challenge to his 30-year prison sentence for conspiratorial and substantive Hobbs Act robbery as untimely. I write separately only to state that I do not share my concurring colleague's concern that this decision creates any "injustice" for Nunez by denying him the opportunity to pursue a vagueness challenge to the pre-*Booker* use of a residual clause definition of "crime of violence" to identify him as a Career Offender with a Guidelines range of 151–188 months rather than a non-Offender range of 121–151 months. That is because Nunez's sentence was not dictated by, or even anchored to, his Guidelines range. As the record makes plain, the district court sentenced Nunez to 30 years' imprisonment—almost double the high end of his Guidelines range—based on heinous conduct committed during the robbery that was not adequately factored into his Guidelines calculation. Specifically, Nunez repeatedly raped and sexually assaulted a bound robbery victim. The district court's discussion of these circumstances leaves me with no doubt that, even if Nunez could show that vagueness in the residual clause did not permit him to be denominated a Career Offender under the Guidelines, that would make no difference to the district court's decision to sentence him to 30 years.

I.

At the outset, let me note that I think it far from clear, even after *Johnson v. United States*, 135 S. Ct. 2551 (2015), that Nunez has a meritorious vagueness challenge to the residual clause of the Career Offender Guideline as applied prior to *United States v. Booker*, 543 U.S. 220 (2005). *See* U.S.S.G. §§ 4B1.1, 4B1.2(a)(2) (1998). The Supreme

1

Court has ruled that the Guidelines, as advisorily applied after *Booker*, are not subject to vagueness challenges. *See Beckles v. United States*, 137 S. Ct. 886 (2017). Our court has not yet decided whether any different conclusion applies to the presumptively mandatory pre-*Booker* Guidelines. The Eleventh Circuit, however, has held that it does not. *See In re Griffin*, 823 F.3d 1350, 1354–55 (11th Cir. 2016). That court observed that a holding requiring the Guidelines to satisfy due process vagueness standards "differs fundamentally and qualitatively from a holding that . . . the ACCA sentencing statute [at issue in *Johnson*]—that increases the statutory penalty for the underlying new crime—is substantively vague." *Id.* at 1356. It explained that, as applied to ACCA's residual clause, *Johnson*'s vagueness determination "requires the district court to reduce the enhanced sentence to at least the unenhanced applicable statutory maximum." *Id.* at 1355.

> In stark contrast, whether the Guidelines are mandatory or advisory, the district court, even without the invalidated clause, could still impose a sentence within the same statutory penalty range and indeed the same sentence as before. In fact, in former mandatory guidelines cases, the resentencing would now be under an even more discretionary advisory system that would permit the district court to impose the same sentence.

*Id.*

In *Cross v. United States*, 892 F.3d 288 (7th Cir. 2018), the Seventh Circuit took a different view, but not necessarily in a way that helps Nunez.[1] That court read *Johnson* to hold that "a person has a right not

---

[1] We have expressly declined to follow *Cross*'s reasoning with respect to the timeliness of a *Johnson*-based vagueness challenge to the pre-*Booker* Guidelines. *See* Panel Op. at 14–15.

to have his sentence *dictated* by the unconstitutionally vague language of the mandatory residual clause." *Id.* at 294 (emphasis in original). Declining to limit that right to sentencing statutes such as ACCA, the court concluded that the *Cross* defendants were prejudiced by "an extended prison term . . . imposed on both men as a result of their designation as career offenders" under the pre-*Booker* Guidelines. *Id.* at 295. The emphasis *Cross* placed on the word "dictated" is significant. The defendants in that case were, in fact, sentenced within increased ranges dictated by their Career Offender designation. But the court had no occasion in *Cross* to consider how, if at all, a defendant would be prejudiced by a pre-*Booker* Career Offender designation that—as in Nunez's case—did *not* "dictate," or even anchor, the sentence actually imposed.[2]

## II.

Nunez cannot here demonstrate prejudice—much less injustice—because his 30-year prison sentence was not dictated by the Career Offender Guideline's residual clause definition of a violent crime. The record convincingly shows that, although Judge Kaplan relied on the residual clause to denominate Nunez a Career Offender

---

[2] Like the *Cross* defendants, Nunez failed to raise a vagueness challenge to the Career Offender Guideline's residual clause either in the district court or on appeal and, thus, must show cause and prejudice, or actual innocence, to pursue the argument on a § 2255 motion. *See Bousley v. United* States, 523 U.S. 614, 621–22 (1998); *Harrington v. United States,* 689 F.3d 124, 129 (2d Cir. 2012). Even such a showing, however, might not be enough to allow Nunez to pursue his vagueness claim if a court were to find him to have waived the argument by stipulating in his plea agreement that his Hobbs Act robbery crimes of conviction qualified as violent felonies under the Career Offender Guideline. *See United States v. Spruill*, 808 F.3d 585, 597 (2d Cir. 2015) (explaining various circumstances that can manifest waiver, including where defendant "agrees to a course of action that he later claims was error"). For purposes of this concurrence, however, I do not assume waiver.

in calculating his Guideline range at 151–188 months, the judge did not feel compelled to sentence Nunez within that range rather than the lesser 121–151 month non-Offender range. Rather, Judge Kaplan decided that, in Nunez's case, justice demanded a 30-year sentence, far above—indeed, almost double—*both* these ranges. In so concluding, Judge Kaplan made no reference to Nunez's Career Offender designation or to the other convictions supporting that designation.[3] Rather, he based the departure on Nunez's heinous conduct in the course of the crimes of conviction, conduct not adequately accounted for by the Guidelines. This included Nunez repeatedly raping and sexually assaulting a bound female victim of the Hobbs Act robbery who, as a consequence, suffered serious and years-long psychological harm.

This court did not need to discuss this conduct in any detail to hold Nunez's § 2255 motion untimely. But such a discussion cannot be avoided to explain why our decision today does Nunez no injustice.

Late on the night of February 14, 1994, Nunez and two confederates (one male, one female) lay in wait for a couple to return to their Bronx apartment with the cash proceeds of their florist business. When the couple reached their door, Nunez's male confederate grabbed the female victim from behind, placed his hand over her mouth, put a gun to her neck, and forced her into the apartment. Meanwhile, Nunez put a gun to the male victim's head

---

[3] To qualify for Career Offender designation, not only must a defendant's instant offense of conviction be a felony crime of violence or a felony controlled substance offense, but also, the defendant must have two prior felony convictions for either a crime of violence or a controlled substance offense. Nunez concedes that his two prior New York first-degree robbery convictions—one committed at gunpoint, the other with a knife—are for violent crimes. *See United States v. Ojeda*, 951 F.3d 66, 72 (2d Cir. 2020).

4

and forced him inside. In the apartment, the male victim's hands were tied behind his back—tied so tightly as later to require surgery for him to regain their full use. Meanwhile, the female victim was taken into a bedroom where she was placed face down on a bed and bound hand and foot by Nunez's male confederate, who then threw pillows and blankets over her head, threatening to kill her if she tried to look at his face.

With their victims thus restrained, the robbers proceeded to ransack the apartment, stealing cash, credit cards, beepers, liquor, and jewelry, including the female victim's wedding ring.

For the female victim, however, the terror was by no means over. Nunez entered the bedroom where she was restrained, pulled down her pants and proceeded, on four separate occasions, to molest her sexually by digitally penetrating her vagina.

The male confederate also entered the bedroom and threatened to burn the woman's business down and to injure her son—whom he identified by name and business—if she reported the robbery to the police.

Then, with all three robbers in the bedroom, Nunez twice raped the terrified female victim, first vaginally and then anally. When he finished, Nunez's male confederate took his turn, also raping the woman both vaginally and anally. These events reduced the three robbers to laughter.

At sentencing, the district court took a much steelier view of things. Judge Kaplan described Nunez's conduct during the robbery as "barbaric," App. 35, "exceptionally heinous, cruel, brutal and degrading," *id.* at 34, and "close to torture, gratuitous infliction of injury and the prolonging of pain and humiliation," *id.* He concluded

5

that a significant upward departure from Nunez's Sentencing Guidelines range was warranted by U.S.S.G. §§ 5K2.0 (cases outside the "heartland"), 5K2.3 (cases of extreme psychological injury to a victim), and 5K2.8 (cases of "unusually heinous, cruel, brutal, or degrading" conduct toward the victim).  Indeed, the district court emphasized that the extent of its departure did not depend on the cumulative effect of these Guidelines.  He would depart to the same significant extent under any one of these Guidelines.  In so stating, the district court observed that characterizing Nunez's actions as "out of the heartland of robbery cases is such a vast understatement as to be absurd."  *Id.* at 35.  Referencing the victim's prolonged psychological injury, detailed in the Pre-Sentence Report and, therefore, requiring no elaboration, the district court stated that it could not "readily imagine a case that more readily fits into 5K2.8."  *Id.* ("Imagine what went through this victim's mind, lying there going through what this man subjected her to, over and over again").

On this record, which so convincingly supports the district court's upward departure to a 30-year sentence, there is absolutely no reason to think that if vagueness in the residual clause did not permit Nunez to be identified as a Career Offender with a Guidelines range of 151–188 months, the district court would have sentenced him within the non-offender Guidelines range of 121–151 months, or even to any sentence less than 30 years.  Thus, insofar as that is Nunez's argument, he cannot show prejudice, much less injustice.[4]

---

[4] Nunez's inability to show prejudice makes it unnecessary for me to address whether he shows cause.  Insofar as Nunez further argues that, regardless of prejudice, vagueness in the residual clause would mean he is "actually innocent" of being a Career Offender, I am not convinced.  The cases Nunez cites that apply the actual innocence standard to a defaulted Guidelines enhancement challenge— whether before or after *Booker*—all involve defendants claiming that they did not, in fact, commit the enhancing predicate crimes.  This comports with precedent

To the extent the district court did anchor its 30-year sentence to a Guidelines range, it was not to the challenged 151–188 month range for Hobbs Act robbery, but rather to the 292–365 month range that would apply to Aggravated Sexual Abuse, 18 U.S.C. § 2241(a)—a crime comparable to the rapes and sexual assaults aggravating Nunez's Hobbs Act robbery and informing the district court's departure decision. Nunez does not challenge the comparison, either generally or specifically for employing a Career Offender enhancement in calculating the resulting 292–365 month range. In fact, any such Career Offender challenge would be to no avail because force is an element of § 2241(a) Aggravated Sexual Abuse, making that comparator offense a crime of violence under U.S.S.G. § 4B1.2(a)(1), without regard to the residual clause definition of U.S.S.G. § 4B1.2(a)(2). Moreover, the district court did not reference the Aggravated Sexual Abuse range as somehow dictating its 30-year sentence. Rather, it drew the comparison simply to demonstrate the reasonableness of its decision to impose a sentence nearly twice the high end of the 151–188 month range applicable to Nunez's robbery crimes of conviction.

In sum, whatever vagueness challenge might be made to U.S.S.G. § 4B1.2(a)(2)'s residual clause definition of a crime of

which makes clear that "actual innocence" refers to factual, not legal, innocence. *See Bousley v. United States*, 523 U.S. at 623; *Poindexter v. Nash*, 333 F.3d 372, 381 (2d Cir. 2003) (actual innocence "normally means simply that the defendant did not commit the crime"). Thus, I doubt that Nunez can use legal principles, such as facial vagueness or categorical construction, to show that he is actually innocent of having committed a "violent crime" of conviction when the facts of his case demonstrate violence beyond any doubt. *See Poindexter v. Nash*, 333 F.3d at 382 (explaining actual innocence exception does not apply where petitioner "merely makes [a] legal argument"); *Darby v. United States*, 508 F. App'x 69, 71 (2d Cir. 2013) (explaining that defendant's "essentially legal argument that he is innocent of the [career offender] sentencing enhancement because the district court misclassified his predicate offenses . . . is insufficient to trigger the actual innocence exception").

violence, the panel's rejection of Nunez's challenge as untimely does him no injustice because the record plainly shows that his 30-year sentence was not dictated by that Guideline. Rather, the sentence represented a significant, but entirely justified, departure from both the challenged and urged Guideline ranges based on Nunez and his confederate repeatedly raping and sexually assaulting their bound robbery victim.

## III.

There is a final reason why I think the panel decision today does Nunez no injustice: the record demonstrates that even a successful vagueness challenge would not secure him a reduced sentence. As already shown, the district court's upward departure to a 30-year sentence was not anchored to Nunez's 151–188 month Career Offender range but, rather, to the fact that his cruel and brutal conduct during the robbery equated to Aggravated Sexual Abuse. There is no reason to think the district court would take a different view of this conduct or impose a lesser sentence if the Guideline's residual clause definition of a violent crime were declared void for vagueness.

That conclusion is only reinforced by the fact that, on remand, Nunez could not be sentenced under the presumptively mandatory Guidelines regime that the Supreme Court declared unconstitutional in *Booker*. Rather, any resentencing would have to be under advisory Guidelines, which afford the district court more—not less—discretion to impose sentences outside the Guidelines. *See In re Griffin*, 823 F.3d at 1355. Moreover, that discretion would allow the district court to consider whether Nunez's Hobbs Act robbery crimes, even if not categorically violent under the elements clause of the Career Offender Guideline, were nevertheless actually so violent as to inform statutory sentencing factors and thereby warrant a non-Guidelines sentence.

*See* 18 U.S.C. § 3553(a)(2)(A) (referencing seriousness of offense and need to provide just punishment for that offense); *id.* § 3553(a)(2)(B) (referencing need to afford adequate deterrence for defendant's criminal conduct); *id.* § 3553(a)(2)(C) (referencing need to protect public from further crimes of defendant); *see also id.* § 3661 (prohibiting any limitation on information concerning "background, character, and conduct" of defendant that district court may consider in imposing appropriate sentence).[5]

\*\*\*

To conclude, the panel's rejection of Nunez's vagueness challenge as untimely does him no injustice for three reasons. First, it is not evident that a vagueness challenge can be made to the pre-*Booker* Guidelines. Second, even giving Nunez the benefit of the doubt on that point, he cannot show prejudice because his challenged 151–188 month Guidelines range did not dictate the 30-year sentence imposed by the district court. Rather, the district court based that significantly higher sentence on conduct—repeated rapes and sexual

---

[5] Because Hobbs Act robbery can be committed by using force against persons *or* property, it reaches more broadly than the Career Offender Guideline's elements clause, which is limited to offenses using force against persons. *Compare* 18 U.S.C. § 1951(a), *with* U.S.S.G. § 4B1.2(a)(1); *cf. United States v. Hill*, 890 F.3d 51 (2018) (recognizing Hobbs Act robbery as crime of violence under ACCA, whose element clause references force against person *or* property). It was for this reason that, despite the actual violence of Nunez's Hobbs Act robbery, the district court could not find it a categorical crime of violence under § 4B1.2(a)(1) and, instead, relied on § 4B1.2(a)(2)'s residual clause. *Booker* does not change the categorical application of the Career Offender Guideline, but it does mean that, in exercising their sentencing discretion pursuant to 18 U.S.C. § 3553(a), district courts can consider whether a defendant committed a crime that is not categorically violent in a particularly violent way. Although definitions of violent crime continue to apply categorically after *Booker,* district courts are free to consider the actual violence of a defendant's criminal conduct in deciding whether to impose a within-Guidelines sentence.

assaults of a robbery victim—that was not adequately factored into the challenged range, and that was more akin to Aggravated Sexual Abuse, a crime that is categorically violent based on its elements, without reference to the challenged residual clause. Third, because the conduct supporting the district court's departure decision would not be mitigated by a successful vagueness challenge to the Guideline's residual clause, and because, on any remand, the district court would have more, not less, discretion to impose a non-Guidelines sentence, I think it clear that remand would not secure Nunez any lesser sentence.

Accordingly, I join in the panel decision to affirm without any reservation about doing Nunez an injustice.